**STATE of Iowa, Appellee,**

v.

**Henry Lloyd COOPER, Jr., Appellant.**

**No. 56569.**

Supreme Court of Iowa.

Nov. 13, 1974.

Johnson, Oakley & Pfeffer, Clinton, for appellant.

Richard C. Turner, Atty. Gen., Darby Maria Coriden and Roxanne B. Conlin, Asst. Attys. Gen., John W. Ackerman, Asst. Co. Atty., for appellee.

Heard before MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

MASON, Justice.

Henry Lloyd Cooper, Jr., was charged by county attorney's information with receiving and possessing stolen property in violation of section 712.1, The Code, 1973, in that he did unlawfully and willfully receive and possess stolen property. The information

was amended during trial to strike the words "receive and possess stolen property" and to replace them with "receive or aid in concealing stolen goods or property." Defendant appeals from judgment following conviction by a jury.

Cooper was arrested March 4, 1973, at the scene of a search under warrant and charged with receiving stolen property.

March 4, 1973, Larry Steward, owner of property south of DeWitt, Iowa, reported a shed on the property had been broken into and several items of personal property which he had stored in the building had been stolen. Among the items taken were numerous guns, a deer hide, bows and arrows, a hair dryer and a phonograph.

Deputy Sheriff of Clinton County Gerald Simons and Iowa Highway Patrolman Richard Bittle investigated the crime. They found tire tracks which resembled the treads on a 1962 Chrysler owned by defendant's accomplice Frank Mervine and footprints made by the type of work shoe defendant wore.

Frank Mervine testified he and defendant stopped at the Steward property at about 9:00 p. m. sometime in 1973. While Mervine was looking for gasoline defendant discovered the "shanty" involved and with Mervine's help broke in. Mervine admitted he and defendant took items from the shed.

A record player was taken to Glenda Starr's apartment in DeWitt, and defendant also hid a .38 caliber pistol under a mattress in Starr's bed. Several other guns and a bow and arrow were taken to Clifford Ortt's apartment. Mervine stated defendant was with him when a deer hide was sold to Robert Gill, although Gill later testified another man named John Kitchen was with Mervine but did not know if anyone else was in the car at the time.

It appears from the record defendant spent much of his time at Glenda Starr's apartment, as well as at the apartment of Sterling Clark, which was in the same building. Both Starr and Mervine testified Starr did not know the property was stolen.

Starr stated she was informed by defendant he had bought the phonograph. Starr found the gun under the mattress later and thinking it belonged to some friend, did not report it to the police.

March 4 Deputy Simons obtained a search warrant from DeWitt Mayor Robert Trefz, "J.P. ex officio." About 8:30 p. m. March 4 DeWitt police officer Rothbart and Patrolman Bittle accompanied Simons to 505½ 8th Avenue in DeWitt. On the premises were the apartments of Glenda Starr and Sterling Clark.

On approaching the house the three officers met defendant and Mervine who were told they had a search warrant and to accompany the officers upstairs.

Sterling Clark's apartment was searched first but nothing was found. A search of Starr's apartment led to the discovery of the phonograph and pistol. Defendant and Mervine were then arrested.

Also present at the Starr residence was Clifford Ortt, who lived next door at 507½ 8th Avenue. With Ortt's voluntary consent his apartment was searched, resulting in the recovery of a hair dryer, several firearms, arrows and a quiver. Neither Ortt nor Starr, who were later married, were arrested.

■ I. The first issue for review stems from defendant's contention the trial court erred in allowing an amendment to the information after both sides rested and after defendant had moved for a directed verdict. The amendment struck the words "receive and possess stolen property" and substituted "receive or aid in concealing stolen goods or property."

It is clear an indictment or information may be amended. Section 773.43, The Code, 1973, provides:

"Amendment. The court may, on motion of the state, and before or during the trial, order the indictment so amended as to correct errors or omissions in matters of form or substance."

And, section 773.42, The Code, makes the statutes dealing with indictments applicable to county attorney informations. Finally, section 773.46, The Code, prohibits amendments which would change the offense intended to be charged in the indictment (or information).

Chapter 712, The Code, is headed, "Receiving Stolen Goods." Defendant was charged under section 712.1, one of three sections in the chapter, which, so far as applicable, provides:

"If any person buy, receive, or aid in concealing any stolen * * * goods, * * * the stealing of which is larceny, * * * knowing the same to have been so obtained, he shall, when the value of the property so bought, received, or concealed by him exceeds * * * twenty dollars, be imprisoned * * *."

This statute defines one crime which may be committed in any of the three ways stated in the statute disjunctively. This statute makes it an offense to buy, receive or aid in concealing stolen property. State v. Hochmuth, 256 Iowa 442, 445, 127 N.W.2d 658, 659.

In *Hochmuth* the information under which defendant was tried accused him of the crime of receiving stolen property having a value in excess of $20 which was committed by defendant receiving the property knowing the same to have been stolen. In one instruction the jury was told it would be its duty to find defendant guilty if the State had established he "bought, received or aided in concealing" the alleged stolen goods knowing the same to have been stolen. Other instructions used the language just quoted or its equivalent and by clear implication required a conviction upon a finding of buying or aiding in concealing, as well as receiving the alleged stolen goods. The jury returned a verdict of guilty.

Hochmuth's complaint on appeal was directed to the court's instruction to convict if it found defendant "bought, received or aided in concealing" the goods. In reversing the case this court held "defendant could not properly be convicted upon a finding it was committed by means not alleged—viz, buying or aiding in concealing."

This is not exactly the factual situation in the case before us.

It is obvious the amendment here did not change the offense charged—receiving stolen property—as prohibited by section 773.-46. It added a second way in which the State charged the offense had been committed by defendant by deleting a word not within the statute, "possessing" and adding the words, "aiding in the concealing."

Notwithstanding the foregoing determination the question remains whether defendant was prejudiced in his defense by allowance of the amendment.

Defendant argues he defended against the offense charged in the information solely on the basis of receiving stolen property, not in aiding in the concealment of such property. He insists his opening statement and cross-examination were based solely on the charge as originally alleged.

As stated, the State originally elected to charge defendant committed the offense by "receiving and possessing stolen property", one of the methods recognized in *Hochmuth* as a way of committing the offense of receiving stolen property. At the close of all evidence defendant moved for a directed verdict alleging a failure of proof of receiving or possessing the stolen property. The motion was overruled and while the court and counsel were discussing proposed instructions in chambers the State moved to amend the information in the manner previously indicated. This amendment was resisted on the ground defendant now argues.

The information would have sufficiently followed the permissible form set out in section 773.35, The Code, for the offense charged if the means of committing it had not been stated. Section 773.11. State v. Hochmuth, 256 Iowa at 445, 127 N.W.2d at 659. However, in that event defendant undoubtedly would have been entitled to a bill

of particulars upon proper request. Section 773.6. If a bill of particulars was requested and filed the State would be required to prove guilt substantially as alleged in such specifications. If, in order to obviate the necessity for a bill of particulars, the State goes further than required by section 773.35 and includes the particulars in the information as here, defendant has a right to rely upon the acts alleged as constituting the offense with which he is charged and rest his defense upon a lack of proof by the State of the acts specified. State v. Hochmuth, 256 Iowa at 446–447, 127 N.W.2d at 660–661 and authorities cited.

In the present case the State chose to specify in the information the manner in which the crime was committed—viz., that defendant did receive and possess stolen property.

Defendant was thus informed the State expected to prove him guilty of violating section 712.1 by receiving and possessing stolen property knowing the same to have been stolen. After the evidence had been closed on both sides and the jury informed by the court the case had then "proceeded to a point where the next proceedings will be the arguments and then later the Instructions of the Court" and defendant's motion for directed verdict based on lack of proof of receiving stolen property had been urged and overruled, defendant was then informed the State would rely upon defendant's aiding in concealing stolen goods or property.

The opening statements of counsel are not a part of the record. However, a study of the record of defendant's cross-examination supports his contention that his defense was based solely on the charge as originally specified.

In our opinion the amendment by the State prejudiced defendant's right to rest his defense on a lack of proof of commission of the crime as originally specified in the information and permitted the jury to find defendant guilty under a specification asserted after the close of the evidence without opportunity to defendant to make any defense to the additional method relied on by the State to prove guilt of the crime charged.

If the amendment involved had been proposed earlier so as not to prejudice defendant's right to make a defense, allowance would have been proper. State v. Crutcher, 174 N.W.2d 449, 450 (Iowa 1970). In our view the amendment came too late. The court's error in allowing the amendment requires reversal.

■ II. Defendant contends the trial court should have sustained his motion and suppressed the evidence seized under the search warrant.

He asserts the warrant was illegal in the following respects: (1) there were insufficient grounds for its issuance; (2) the warrant was signed by the "J.P. ex officio," not a magistrate; (3) there was no endorsement of the names and addresses of persons who gave sworn testimony which was relied on; and (4) there was no written abstract of their testimony in the warrant.

The record discloses the county attorney's information was filed April 12, 1973. The minutes of testimony attached thereto informed defendant the State expected to prove that certain specifically named witnesses proceeded to search the apartments of Starr and Clark under a search warrant. June 12 defendant filed motion to suppress evidence. However, he did not allege any of the grounds now urged as to why the warrant was illegal.

The motion to suppress which defendant now seeks as a basis for reversal was made at a point when the State was almost through its evidence after the exhibits involved had been identified by various witnesses and displayed to the jury. We are convinced that under this record defendant's failure to preserve the error now relied on presents nothing for review in this court.

III. Defendant's contention the court erred in giving instruction 10 bearing on

defendant's burden of proving Glenda Starr to be an accomplice is without merit.

IV. In view of our determination in division I other contentions urged by defendant need not be reached.

The case is therefore, reversed.