**STATE of Iowa, Appellant,**

v.

**Jean ALDRICH, Appellee.**

**No. 57150.**

Supreme Court of Iowa.

July 31, 1975.

892

Richard C. Turner, Atty. Gen., and Lyle A. Rodenburg, County Atty., for appellant.

Thomas L. Root, Council Bluffs, for appellee.

Heard by MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

This appeal requires us to determine the constitutionality of our criminal statute relating to dead bodies:

> "714.22 *Exposing dead bodies.* If any person willfully and unnecessarily, and in an improper manner, indecently expose, throw away, or abandon any human body, or the remains thereof, in any public place, or in any river, stream, pond, or other place, he shall be imprisoned * * or be fined * * *."

A county attorney's information filed November 6, 1973 largely restated the statute by charging defendant

> "Did willfully and unnecessarily, and in an improper manner, indecently expose, throw away, or abandon a human body, or the remains thereof in a hill behind the residence at 386 Lincoln, Council Bluffs, Iowa,"

in violation of § 714.22.

January 25, 1974, defendant filed her demurrer asserting § 714.22 "is too vague, incomplete, indefinite so as reasonable men would differ as to the strict construction of said statute, particularly the words used in the statute 'unnecessarily', 'improper manner' and 'indecently expose' " in violation of the Iowa Constitution, Article I, section 9

and the United States Constitution, amendment 14.

On the same date trial court sustained the demurrer by order which stated, *inter alia*:

"The Court, having tried a companion case to these matters and being familiar with the evidence that would be submitted herein, and having examined the minutes of the testimony relative to the charge involved * * *, believes that the evidence in this matter is to the effect that a fetus between 24 and 26 weeks of development was stillborn to one Deborah Belt. That at this time the defendants in the instant cases were present in the dwelling where this occurrence took place. That immediately thereafter, some of the parties present wrapped the fetus in a new blanket, placed it in a metal box and buried it in the back yard of the home * * *. That this occurred in January or February of 1972. That in October of 1973, the police received an anonymous telephone call * * * [and] * * * went to the area and dug up the metal box containing the fetus."

Trial court then reasoned since the body remained buried for "18 or 19 months" defendant "in no sense of the word" could be found guilty of exposing the body. Further, it concluded burial precluded conviction for throwing away or abandoning the body. Finally, it held the terms "unnecessarily", "in an improper manner" and "indecently" were unconstitutionally vague.

Appealing, the State asserts trial court was in error in considering "evidence" in ruling on defendant's demurrer, and erroneously determined § 714.22 was unconstitutionally vague.

■ I. It is apparent this demurrer basically alleged unconstitutionality of the statute on its face, and not as applied. See *State v. Kueny*, 215 N.W.2d 215, 217 (Iowa 1974) ("By way of exclusion, since this appeal stems from a judgment sustaining defendant's demurrer, our review is confined to alleged facial invalidity * * * "). Where a statute is thus subjected to a facial attack, the sole test of constitutionality is what *may* be done under its authority rather than what *was* done. In re Henderson, 199 N.W.2d 111, 122 (Iowa 1972) (special concurrence by five justices); *Chicago, Rock Island and Pacific R. Co. v. Liddle*, 253 Iowa 402, 409, 112 N.W.2d 852, 856 (1962).

II. A careful study of trial court's order persuades us it did not consider evidence in ruling on the constitutional issue, but rather considered the circumstances alleged in the minutes attached to the information, and judicially noticed matters learned from a companion case, in determining burial of the fetus *precluded* application of § 714.22.

■ It is obvious the order appealed from cannot be supported by this rationale. Matters alleged in the minutes are not part of the indictment or information. Any insufficiency therein will not serve as grounds for demurrer to the indictment. *State v. Kobrock*, 213 N.W.2d 481, 483 (Iowa 1973); *State v. Salter*, 162 N.W.2d 427, 431 (Iowa 1968); *State v. Youngblut*, 257 Iowa 343, 345, 132 N.W.2d 486, 487 (1965); see §§ 777.2, 777.5, The Code. A proper method to raise this issue would have been by motion for bill of particulars (§ 773.6) followed by a motion to set aside the information (§ 773.7). *State v. Batchelor*, 180 N.W.2d 457, 459 (Iowa 1970).

■ Moreover, it is generally impermissible for a trial court to take judicial notice of proceedings in a related but wholly different case. *Johnson v. Johnson*, 188 N.W.2d 288, 292–293 (Iowa 1971).

■ We agree with the State these matters were not before the court and could not furnish grounds for sustaining the demurrer.

III. We turn to the more troublesome issue, whether § 714.22 is unconstitutionally vague.

Applicable principles, with supporting authorities, were summarized in *State v. Kueny*, 215 N.W.2d 215 (Iowa 1974).

■ Regularly enacted statutes are accorded a strong presumption of constitutionality. *Id.* at 216.

■ When constitutionality is merely doubtful this court will not interfere as it must be shown that legislative enactments clearly, palpably and without doubt infringe upon constitutional rights before an attack will be upheld. *Id.* at 217.

■ Every reasonable basis of support for a statute must be negated by the attacking party. *Id.* at 217.

■ A statute is unconstitutionally vague, and thus offends due process, if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. *Id.* at 217.

■ Terminology of a statute meets the constitutional test if its meaning is fairly ascertainable by reference to similar statutes, prior judicial determinations, reference to the dictionary, or if the questioned words have a common and generally accepted meaning. *Id.* at 217.

■ Defendant in this case made no constitutional attack on the words "abandon" and "throw away". Apparently it was clear those words do have generally accepted meanings. Neither is a challenge made to the term "willful" which, in the context of this statute, means an intentional act inconsistent with good faith and good intentions. *Hawthorne v. Delano*, 172 Iowa 44, 55, 152 N.W. 17, 20 (1915). Trial court's conclusion a broad reading of "throw away" or "abandon" might subject to prosecution anyone burying a body ignores the judicially-recognized meaning of "willful".

We have already noted defendant's demurrer constitutionally attacked only the § 714.22 terms "unnecessarily", "improper manner" and "indecently expose."

The term "unnecessarily" has not been judicially defined in Iowa. Black's Law Dictionary, p. 1707 (rev. fourth ed. 1968) defines "unnecessary" as "not required by the circumstances of the case." Webster's Third New International Dictionary (1966) defines "unnecessarily" as "not by necessity" and "necessity" as "a condition arising out of circumstances that compels to a certain course of action." The term has been defined to mean heedlessly and without necessity. *St. Louis & S.F. R. Co. v. Franklin*, 58 Tex.Civ.App. 41, 49, 123 S.W. 1150, 1155 (1909), and in a criminal prosecution has been held to be not so uncertain in meaning as to deprive an accused of due process. *State v. Persons*, 114 Vt. 435, 437, 46 A.2d 854, 856 (1946).

■ "Unnecessarily" is a term of common usage, has a generally accepted meaning, and clearly conveys a legislative intent to preclude from the ambit of § 714.22 prima facie violations compelled by the circumstances.

The second statutory phrase under scrutiny is "improper manner." The State appears to argue "improper manner" in a § 714.22 context is treatment or disposition of a body contrary to the various reporting provisions of chapters 144 and 339, The Code. It is clear, however, these reporting sections could not serve to modify "expose", "throw away" or "abandon" as the phrase "in an improper manner" does. Nor is it evident the legislature designed § 714.22 to provide a criminal penalty for violation of the reporting statutes, which carry their own penalty. See §§ 144.53, 339.5, 339.13, The Code.

In *State v. Graham*, 203 N.W.2d 600, 603 (Iowa 1973) we said "improperly" is a word of such ordinary usage and so generally understood as to permit but not require it to be instructionally defined. The same word in § 723.1, The Code ("Interference with administration of justice. If any person attempt in any manner to improperly influence, intimidate, impede, or obstruct any * * * officer * * * ") withstood constitutional attack in *State v. Hartung*,

239 Iowa 414, 428, 30 N.W.2d 491, 499 (1948), the court holding the term was not so "indefinite" as to deprive defendant of due process under the federal and state constitutions.

■ As found in § 714.22 the phrase "improper manner", when linked to the term "willfully" and employed to assist in expressing a prohibition against throwing away or abandoning a human body in a public place or river, neither rises to crucial significance nor is so vague *per se* as to deprive a person of ordinary intelligence a reasonable opportunity to know what is forbidden. The phrase as found in the statute *sub judice* obviously takes its coloration from "willfully" and carries the same connotation of intentional indignities inconsistent with good faith and good intentions. See *Hawthorne v. Delano,* supra.

■ We thus reach the final challenged phrase, "indecently expose." We are confronted of course with decisions holding the word "indecent" unconstitutionally vague, the most recent being *State v. Kueny,* supra at 218, where we said:

"It may be that at one time words such as are here involved were deemed to have an ordinarily understandable meaning. * * *

"But common usage thereof has been so generalized as to encompass an infinite variety of behavorial patterns. This in turn has eroded the effective employment of such terms *in any statutory enactment,* absent an attendant specific definition thereof, as descriptions of proscribed ultimate criminal conduct." (Emphasis supplied.)

The State attempts to distinguish these authorities, arguing although changing sexual mores have rendered meaningless the term "indecent" in a sexual sense, the decencies (and therefore indecencies) of treatment of dead bodies still prevail.

This court has judicially considered "the universal sentiments and feelings of mankind as to their dead," *In re Disinterment of Body of Jarvis,* 244 Iowa 1025, 1034, 58 N.W.2d 24, 29 (1953), and observed such sentiment includes a law-granted right to decent burial, *Anderson v. Acheson,* 132 Iowa 744, 748, 110 N.W. 335, 336 (1907).

It is obvious the word "indecently" in § 714.22 was intended to modify only "expose". Equally apparent is the fact the phrase "indecently expose" may by its indefinite character invoke divergent concepts. For example, next of kin might conscientiously differ under certain circumstances whether an open casket at a funeral would be an indecent exposure of a decedent's body. Considered in this light and in view of the language in *Kueny* and authorities therein cited, we conclude the phrase "indecently expose" as used in § 714.22 is too vague to pass constitutional muster.

IV. However, this conclusion does not necessarily mean the statute as a whole is unconstitutional or that defendant's demurrer should have been sustained.

We must determine whether after excising the phrase "indecently expose" there remains a viable statute expressive of legislative intent.

■ Although we have said where there is no severability clause in the statute there is a presumption the statute was meant to stand or fall in its entirety, *State v. Books,* 225 N.W.2d 322, 325 (Iowa 1975), such clauses are of recent origin, 2 Sutherland Statutory Construction § 44.08, p. 349 (Sands fourth ed. 1973). The statute *sub judice* dates back to the Code of 1851, where it was then combined in § 2714 with the concept now incorporated in § 714.21 ("Violating Sepulcher"). Consequently, absence of a severability provision in such an ancient enactment is of little significance. In any event, the same concept is now incorporated in our severability statute, § 4.12, The Code.

Applying those tests of severability recently reviewed in *State v. Blyth*, 226 N.W.2d 250, 261–262 (Iowa 1975) we hold the doctrine applies here. Section 714.22 proscribes three methods of treating a dead body. After severing "indecently expose", two would remain intact with all limitations, "capable of being executed in accordance with the apparent legislative intent, or purpose, wholly independent of that which was rejected. * * *" *State v. Blyth,* supra at 262. This result does not violate the rule against a complete judicial restructuring of the statute. See *State v. Kueny,* supra at 219; *State v. Wedelstedt,* 213 N.W.2d 652, 656 (Iowa 1973).

V. It is apparent § 714.22 was intended to define but a single crime, mistreatment of dead bodies, which may be committed in any of three ways stated in the statute disjunctively. See *State v. Cooper,* 223 N.W.2d 177, 179 (Iowa 1974); *State v. Hochmuth,* 256 Iowa 442, 445, 127 N.W.2d 658, 659 (1964). An information charging the offense is not invalid or insufficient because such acts are charged in the disjunctive or alternatively. Section 773.25, The Code.

Had trial court applied the severability doctrine, *supra,* the demurrer should have been overruled as there remained, after deleting "indecently expose", a viable statute, and consequently, a valid charge. Those words in the information may be stricken on defendant's motion or trial court's own motion.

In so holding we are not unmindful of §§ 777.2(2) and 777.8, The Code, as interpreted by *State v. Talerico,* 227 Iowa 1315, 1317–1318, 290 N.W. 660, 661 (1940) (A claim of unconstitutionality falls within § 777.2(2); if a demurrer is successfully sustained on this ground the judgment is final and defendant must be discharged). Here the constitutional assault successfully eliminated only one of the three methods by which the crime was disjunctively alleged to have been committed, and did not consti-

tute a legal defense or bar to the prosecution within the intendment of § 777.8. As the demurrer was improperly sustained, there is no bar to further prosecution for the same offense. Section 777.8, The Code (" * * * If a demurrer to an indictment is incorrectly sustained, such error shall not act as a bar to further prosecution for the same offense.")

We therefore reverse and remand for further prosecution in conformance herewith.

Reversed and remanded.

MOORE, C. J., and REES and HARRIS, JJ. concur.

UHLENHOPP, J., concurs specially.

UHLENHOPP, Justice (concurring specially).

I concur in the result and in all of the court's opinion except the portion dealing with the words, "indecently expose." I do not think those words are too vague. If we had a freedom of speech or press problem, we would have a different case, but I take it that we do not have such a problem.